andria. In 1824 or 1825 he removed to Fairfax county, in Virginia, where he resided until 1829 or 1830, when he removed to the county of Washington, where he has since resided. That while the defendant so resided in Alexandria and Virginia, he was in the habit of occasionally visiting the county of Washington during each year. That the plaintiff was in the habit of visiting the District of Columbia once or twice a year, spring or fall, from 1818 to 1824, on business, and remaining, at each visit, in said district for several days, part of which he spent in the county of Washington, and the residue in the county of Alexandria. In particular, that in April and September, 1822, he so came into the said district, and both of said counties, and continued in the said district several consecutive days, and in Alexandria from the 5th to the 9th of April, 1822. And if upon such state of facts the court shall be of opinion that the plaintiff is entitled to recover, then judgment to be entered for the plaintiff; and, if for the defendant, then judgment for the defendant.

The question submitted was, whether, under the circumstances so stated, the plea of the act of limitations of Maryland, 1715, c. 23, § 6, "that the debt" was "above twelve years' standing," was a good defence to this action.

R. S. Coxe, for plaintiff, contended that the condition of the bond was for a continuing guaranty, and, therefore, the statute of limitations did not apply to the case; and that it was incumbent on the defendant to show that he had resided in Washington county the whole twelve years. That Alexandria county, being governed by a different code of laws, was to be considered as foreign to Washington county. That the defendant, while residing in Alexandria county, is to be considered as "absent out of this province," (within the meaning and true construction of the Maryland act of November, 1765, c. 12, § 2,) when the cause of action accrued, and that he could not be considered as present in the province, within the third section of that act, until he came into the county of Washington.

R. J. Brent, for defendant, cited the case of Bank of Alexandria v. Dyer [Case No. 847], in this court, at March term, 1838, in which this court decided that Alexandria county was not "beyond seas," within the true construction of the Maryland act of limitations, which decision has been since affirmed by the supreme court, in the same case (14 Pet. [39 U. S.] 141).

[See Case No. 13,587.]

SUDHOFF (Putnam v.). See Case No. 11,483.

## Case No. 13,589.

The SUE.

[Blatchf. Pr. Cas. 361.] [1]

District Court, S. D. New York. May, 1863.

PRIZE—VIOLATION OF BLOCKADE.

Vessel and cargo condemned for an attempt to violate the blockade.

In admiralty.

BETTS, District Judge. The above vessel and cargo were captured as prize, March 30, 1863, at sea, off Little River inlet, by the United States steamer Monticello, near the coast of North and South Carolina, and were sent to this port for adjudication. The writ of attachment and the monition were duly served, and were returned April 28 thereafter, and proclamation and default thereon were taken in open court. The vessel's papers, found on board of her on her capture, were a certificate of British registry, dated at Nassau, N. P., February 21, 1862, showing that she was owned by Augustus John Adderly of that place; a shipping agreement, dated March 16, 1863, showing that she was bound on a voyage from Nassau to Beaufort, N. C., and back to Nassau and other port or ports; and her clearance at the same port, dated March 16, 1863, for same destination, with the cargo and the bill of lading thereof on board. The master, the mate, and the cook were examined in preparatorio as witnesses, and testified that the vessel was captured off the coast of South Carolina, about 35 miles to the south of Wilmington; that she was English-owned, and was bound for any Confederate port she could reach; that they knew of the blockade of the ports along the coast; and that all understood that the vessel was destined to run the blockade. The case admits of no question, on the proofs, that the vessel was, when seized, intentionally engaged in an attempt to violate the existing blockade of the coast. A decree of condemnation of the vessel and cargo is, accordingly, rendered.